ALEXANDER B. CVITAN (SBN 81746)
E-mail: alc@rac-law.com
MARSHA M. HAMASAKI (SBN 102720)
E-mail: marshah@rac-law.com;
PETER A. HUTCHINSON (SBN 225399), and
E-mail: peterh@rac-law.com,
REICH, ADELL & CVITAN
A Professional Law Corporation
3550 Wilshire Blvd., Suite 2000
Los Angeles, California 90010-2421
Telephone: (213) 386-3860; Facsimile: (213) 386-5583
Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICST OF CALIFORNIA

| | |
|---|---|
| CONSTRUCTION LABORERS TRUST FUNDS FOR SOUTHERN CALIFORNIA ADMINISTRATIVE COMPANY, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>H ROBERTS CONSTRUCTION, a California corporation; KATHLEEN F. ROBERTS, an individual; BUSINESS ALLIANCE INSURANCE COMPANY, a California corporation,<br><br>Defendants. | CASE NO.:<br><br>**COMPLAINT FOR:**<br><br>1. **MONETARY DAMAGES DUE TO EMPLOYEE BENEFIT PLANS**<br><br>2. **MONETARY DAMAGES FOR BREACH OF SETTLEMENT AGREEMENT**<br><br>3. **MONETARY DAMAGES THROUGH ENFORCEMENT OF LICENSE BOND**<br><br>4. **SPECIFIC PERFORMANCE OF OBLIGATION TO PRODUCE RECORDS FOR AUDIT**<br><br>[29 U.S.C. §§ 1132(g)(2) and 1145; 29 U.S.C. § 1132(a)(3); 29 U.S.C. § 185; 28 U.S.C. § 1367(a)] |

Plaintiff, Construction Laborers Trust Funds for Southern California Administrative Company, a Delaware limited liability company, alleges:

388343.3                                                          1

## JURISDICTION AND VENUE

1. This action is brought by a fiduciary administrator on behalf of employee benefit plans against an employer, one of its officers and its license bond surety to: (a) enforce of the terms of collective bargaining agreements and plan trust agreements to recover fringe benefit contributions and related damages due by the employer on behalf of its employees (Claim 1); (b) enforce the terms of a settlement agreement between the plans, the employer and the officer covering a portion of the amount due (Claim 2); (c) enforce a claim against the employer's license bond covering a portion of the amount due (Claim 3); and (d) compel the employer to produce records for audit to determine if additional amounts are due (Claim 4). This Court has jurisdiction over Claims 1, 2 and 4 pursuant to: sections 502(g)(2) and 515 of the Employee Retirement Income Security Act (ERISA) (codified at 29 U.S.C. §§ 1132(g)(2) and 1145); section 502(a)(3) of ERISA (codified at 29 U.S.C. § 1132(a)(3)); and section 301 of the Labor Management Relations Act (LMRA) (codified at 29 U.S.C. § 185). This Court has supplemental jurisdiction over Claim 3 pursuant to 28 U.S.C. § 1367(a). Pursuant to section 502(e)(2) of ERISA (codified at 29 U.S.C. § 1132(e)(2)), venue is proper in this district for each of the following reasons: the plans are administered in this district; the employer's performance and breach took place in this district; and the employer resides or may be found in this district.

## PARTIES

2. Plaintiff ("Adminco") is an administrator of, agent for collection for, a fiduciary to, and brings this action on behalf of the following employee benefit plans: Laborers Health and Welfare Trust Fund for Southern California; Construction Laborers Pension Trust for Southern California; Construction Laborers

Vacation Trust for Southern California; Laborers Training and Re-Training Trust Fund for Southern California; Fund for Construction Industry Advancement; Center for Contract Compliance; Laborers Contract Administration Trust Fund for Southern California; Laborers' Trusts Administrative Trust Fund for Southern California; and Southern California Partnership for Jobs Trust Fund (collectively "Trust Funds"). Each of the Trust Funds is an express trust created by written agreement, an employee benefit plan within the meaning of section 3(3) of ERISA (29 U.S.C. § 1002(3)), and a multi-employer plan within the meaning of section 3(37)(A) of ERISA (29 U.S.C. § 1002(37)(A)).  Each of the Trust Funds exists pursuant to ERISA and section 302 of the LMRA (29 U.S.C. § 186).  Adminco and the Trust Funds' principal places of business are in the County of Los Angeles, State of California.

3. Adminco is informed and believes, and on that basis alleges, that defendant H Roberts Construction ("Employer"):  is a corporation organized and existing under the laws of the State of California, has a principal place of business in the City of Long Beach, County of Los Angeles, State of California; and does, or at all relevant times did, business in the State of California as a construction contractor in an industry affecting interstate commerce.

4. Adminco is informed and believes, and on that basis alleges, that Kathleen F. Roberts ("Principal Officer") is an individual who resides in the County of Orange, State of California who is an officer of the Employer, including its Chief Executive Officer and President, and has been at all times relevant to this complaint, including since at least February 2016.

5. Adminco is informed and believes, and on that basis alleges, that defendant Business Alliance Insurance Company ("Surety") is a California

corporation that is licensed and authorized to perform and transact a surety business in the State of California, which has a principal place of business in the city of South San Francisco, County of San Mateo, State of California, and which does, or at all relevant times did, conduct business in California as a surety.

## AGREEMENTS; LICENSE BOND

6.     The Employer is, and at all relevant times was (including from at least since February 2016 and all times during which the events giving rise to the liabilities alleged in this complaint occurred), bound to certain collective bargaining agreements of the Southern California District Council of Laborers and its affiliated local Unions (collectively "Laborers Union") known as the Construction Master Labor Agreements, including one known as the Southern California Master Labor Agreement.

7.     Pursuant to the Construction Master Labor Agreements, employers become – and the Employer became and is – bound to the terms and conditions of the various trust agreements that created each of the Trust Funds ("Trust Agreements").

8.     Under the terms of the Construction Master Labor Agreements and Trust Agreements, employers, including the Employer, are required to submit monthly fringe benefit contributions ("Monthly Contributions") to the Trust Funds for all hours worked by (or paid for) their employees who perform work covered by the Construction Master Labor Agreements ("Covered Work"). Also, as provided for by the Laborers Health and Welfare Trust Fund for Southern California ("Health Fund"), which is one of the Trust Funds, the Employer obtained health insurance for its non-bargaining unit employees ("Non-Jobsite Agreement"). The Employer is,

and at all relevant times was (including from at least since February 2016 and all times during which the events giving rise to the liabilities alleged in this complaint occurred), bound to its Non-Jobsite Agreement.  Pursuant to its Non-Jobsite Agreement, the Employer was required to remit Monthly Contributions to the Health Fund on behalf of its non-bargaining unit employees.  Where referred to collectively herein, the Construction Master Labor Agreements, Trust Agreements and Non-Jobsite Agreement are referred as "the Agreements."

9. Under the terms of the Agreements, employers, including the Employer, are required to submit to the Trust Funds, with their Monthly Contributions, monthly reports, itemized by project, listing the names of their employees who performed Covered Work, their Social Security numbers, the hours of work performed by (or paid for) each, and the resulting Monthly Contributions due for them ("Monthly Reports").  The Trust Funds rely on Monthly Reports – and the accuracy of those reports – to determine the amount of Monthly Contributions due to the Trust Funds by employers and the credit toward fringe benefits to be allocated to their employees.

10. The Agreements provide for the payment of interest on delinquent Monthly Contributions from the date due at a rate set by the trustees of the Trust Funds.  The trustees have set that rate at five percent (5%) above the prime rate set by the Federal Reserve Board of San Francisco, California.  The Agreements also provide for the payment of liquidated damages for each month of delinquent Monthly Contributions or Monthly Reports, for each Trust Fund separately, in the amount of twenty percent (20%) of the delinquent Monthly Contributions due to the Trust Fund or $25, whichever is greater (except with respect to the Laborers Contract Administration Trust Fund for Southern California, which assesses liquidated damages at the greater of $20 or ten percent (10%)).  In addition,

employers are required to pay fees for the submission of dishonored checks.

11. The failure of employers to pay Monthly Contributions when due causes damages to the Trust Funds and its participants beyond the value of the unpaid Monthly Contributions, which are difficult to quantify. Apart from the fees and costs incurred in litigation, the harm caused includes, but is not limited to, the administrative costs of processing and collecting delinquencies, the costs of adjusting benefit credits and notifying participants, the additional burden placed on contractors who faithfully pay their contributions, and the burden upon participants and beneficiaries who may be unable to qualify for benefits they may have otherwise been entitled to had it not been for the delinquency of their employer. The liquidated damages provision of the Agreements was meant to compensate for the loss to the Trust Funds, which is incurred even if the Monthly Contributions for a given month are later paid. It is based on the Trust Funds' ratio of collection costs over amounts collected, which are regularly reported to the Trust Funds' trustees.

12. Under the terms of the Agreements, employers, including the Employer, agree to subcontract Covered Work only to entities that are signatory to a Construction Master Labor Agreement applicable to the work performed. If an employer subcontracts Covered Work to a non-signatory entity, the employer becomes liable to the Trust Funds in an amount equal to the Monthly Contributions that would have been due if the entity had been signatory (plus interest, liquidated damages and audit fees thereon).

13. Under the terms of the Agreements, employers, including the Employer, agree not to subcontract Covered Work to entities that are delinquent to the Trust Funds. If an employer subcontracts Covered Work to such an entity the employer becomes under the terms of the Agreements liable to the Trust Funds for the

Monthly Contributions due by the subcontractor and any lower-tier subcontractors.

14. The Agreements provide the Trust Funds with specific authority to examine the payroll and business records of employers, including the Employer, to determine whether they have reported all hours worked by (or paid for) their employees who perform Covered Work, and whether they have paid the appropriate Monthly Contributions and other amounts due by them to the Trust Funds. The Agreements further provide that employers, including the Employer, must maintain records sufficient for the Trust Funds to verify proper Monthly Reporting, and, where there has been inaccurate Monthly Reporting, to determine the additional amounts due, and that the employer must pay the Trust Funds' audit fees if it is delinquent to the Trust Funds. The Trust Funds have delegated the authority to perform such audits to Adminco.

15. The Agreements require employers to pay the Trust Funds' attorneys' fees and costs of litigation to enforce the Agreements' foregoing terms, including the Monthly Contribution, Monthly Reporting, subcontracting and audit provisions.

16. Adminco is informed and believes, and on that basis alleges, that in order to adhere to California Business and Professions Code § 7071.6(a), the Employer obtained a license bond from the Surety in the penal sum required by law and filed it with the Registrar of the California State Contractors License Board. The bond referenced in this paragraph is referred to hereinafter as the "License Bond."

///
///
///
///
///

## FIRST CLAIM FOR RELIEF

(Against the Employer for Monetary Damages Due to Employee Benefit Plans for Failure to Comply With Terms of Agreements)

17. Adminco repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 16 above as if fully set forth here.

18. The Employer has failed to pay, and has failed to timely pay, Monthly Contributions due by it to the Trust Funds. Pursuant to the Agreements and sections 502(g)(2) and 515 of ERISA (29 U.S.C. §§ 1132(g)(2) and 1145), the Employer owes the Trust Funds a known amount of $107,451.93 for unpaid or late-paid Monthly Contributions and related damages (and/or late-submitted Monthly Reports) for the period March 2017 through February 2020 ("Known Delinquency"). The Known Delinquency consists of: $59,636.60 in unpaid Monthly Contributions; $9,266.90 in interest (through July 23, 2020); $37,233.43 in liquidated damages; $1,280.00 in audit fees; and $35.00 in insufficient funds check fees.

19. Adminco will establish by proof at the time of trial or through dispositive motion the Known Delinquency and any additional amounts determined to be due to the Trust Funds by the Employer, including any additional Monthly Contributions, interest, liquidated damages, audit fees, fees for the submission of checks not honored by the bank upon which they were drawn, attorneys' fees and costs, and amounts owed as a result of work performed by subcontractors of the Employer (or lower-tier subcontractors). If deemed necessary by the Court, Adminco will amend its complaint to add any additional amounts determined to be due. Any and all conditions to the Employer's obligations under the Agreements to pay the Known Delinquency and any additional amounts due under the Agreements to the Trust Funds have been met.

388343.3

8

20. Under the terms of the Agreements and section 502(g)(2)(D) of ERISA (29 U.S.C. § 1132(g)(2)(D)), Adminco is entitled to an award of its attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

(Jointly and Severally Against the Employer and Principal Officer

for Monetary Damages for Breach of Settlement Agreement)

21. Adminco repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 20 above as if fully set forth here.

22. The Trust Funds (through Adminco), the Employer and the Principal Officer entered into a conditional settlement ("Settlement Agreement") with respect to the Employer's then-known delinquency to the Trust Funds ("Then-Known Delinquency"). Under the terms of the Settlement Agreement, the Principal Officer agreed, and did, become personally bound the terms of the Settlement Agreement and assumed joint and several liability with the Employer for amounts due pursuant to it, including amounts due in the event of breach of it. In and by the terms of the Settlement Agreement, the Trust Funds agreed to waive a portion of the Employer's Then-Known Delinquency upon, and conditioned upon, full performance by the Employer and Principal Officer of the terms of the Settlement Agreement, including but not limited to payment of a portion of the Then-Known Delinquency in monthly installments ("Payment Plan") and compliance with the terms of the Monthly Reporting, Monthly Contribution and audit provisions of the Agreements through the date of such full performance.

23. Under the terms of the Settlement Agreement, each of the following constitutes a breach of it by the Employer and Principal Officer: (a) failure to remit,

388343.3

9

or to timely remit, a Payment Plan installment; (b) failure to timely submit Monthly Reports disclosing all of the work for which Monthly Contributions are due with payment of the Monthly Contributions due; (c) failure to comply with the obligation under the Agreements to maintain adequate documentation of work performed in order for the Trust Funds to determine through audit whether it has complied with the Monthly Reporting and Contribution requirements of the Agreements; and (d) failure to, upon request by the Trust Funds, comply with the obligation under the Agreements to provide the Trust Funds with full access to the Employer's books and records for audit.

24. The Employer breached the Settlement Agreement in at least the following ways: (a) failing to remit Payment Plan installments; (b) failing to timely submit Monthly Reports disclosing all of the work for which Monthly Contributions are due with payment of the Monthly Contributions due, including by failing to submit Monthly Reports, failing to pay Monthly Contributions reported to be due, and failing to disclose all of the work for which Monthly Contributions are due on Monthly Reports; and (c) failing to fully produce books and records for audit upon request by the Trust Funds.

25. As a result of the breach of the Settlement Agreement by the Employer and Principal Officer: (a) the conditions in the Settlement Agreement for waiver of a portion the Then-Known Delinquency were not met; (b) the full amount of the Then-Known Delinquency came due under the terms of the Settlement Agreement, minus Payment Plan installments made plus interest accrued; and (c) the Settlement Agreement does not bar collection of the unsatisfied amounts of the Then-Known Delinquency by any lawful means, including but not limited to through enforcement of the Agreements (as asserted in and by Adminco's first claim for relief herein, which also includes additional delinquent amounts accrued or determined to be due

following execution of the Settlement Agreement) and the Settlement Agreement (as asserted in this second claim for relief).  The amount due by the Employer and Principal Officer for their breach of the Settlement Agreement is $60,792.73 as of July 23, 2020 plus additional interest from July 23, 2020.  Any and all conditions to the obligation of the Employer and Principal Officer under the Settlement Agreement to pay this amount have been met.

26. Under the terms of the Settlement Agreement and section 502(g)(2)(D) of ERISA (29 U.S.C. § 1132(g)(2)(D)), Adminco is entitled to an award of its attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

(Against the Surety for Monetary Damages Through Enforcement of License Bond)

27. Adminco repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 26 above as if fully set forth here.

28. The Trust Funds are "Laborers" under California Civil Code ("Civil Code") § 8024(b).  As such, they are beneficiaries of the License Bond under California Business and Professions Code ("Business and Professions Code") § 7071.5(e).

29. Adminco submitted a claim against the License Bond for Monthly Contributions due by the Employer to the Trust Funds ("License Bond Claim").  Pursuant to Business and Professions Code §§ 7071.5(e) and 7071.11(a), and, upon information and belief, the terms of the License Bond, the Surety is required to pay the Trust Funds up to the penal sum of the License Bond for the failure of its

1 principal, the Employer, to remit Monthly Contributions to the Trust Funds.

30. The Surety has not paid the License Bond Claim as required by the above-referenced statutes, and, upon information and belief, the terms of the License Bond.

31. Adminco brings this claim for relief on behalf of the Trust Funds under Business and Professions Code § 7071.11(c)(1) to enforce the terms of the License Bond to recover a portion of the amount due by the Employer to the Trust Funds (up to the penal sum of the License Bond).

**FOURTH CLAIM FOR RELIEF**

(Against the Employer for Specific Performance of
Obligation to Produce Records for Audit)

32. Adminco repeats, realleges and incorporates by reference each and every allegation contained in paragraphs 1 through 31 above as if fully set forth here.

33. Adminco requested that the Employer produce its books and records for audit. The Employer has refused to fully comply with Adminco's request and has not produced all of the books and records requested by Adminco. Adminco requests that the Court exercise its authority under 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3) to order the Employer to comply with its obligation under the Agreements and ERISA to fully produce its books and records in order for Adminco to complete an audit to determine if additional amounts are due.

34. An award of attorneys' fees and costs is provided for by Agreements and under sections 502(g)(1) and/or (g)(2) of ERISA (29 U.S.C. § 1132(g)(1) and/or

(g)(2)).

**WHEREFORE, Adminco prays for judgment as follows:**

<u>ON ADMINCO'S FIRST CLAIM FOR RELIEF</u>

[Against the Employer for Monetary Damages Due to Employee Benefit Plans for Failure to Comply With Terms of Agreements]

A. For $59,636.60 in unpaid Monthly Contributions, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(A).

B. For $9,266.90 in interest (through July 23, 2020) on unpaid or late paid Monthly Contributions at the rate of five percent above the variable prime rate set by the Federal Reserve Board of San Francisco, California, plus such additional interest that has or does hereafter accrue from July 23, 2020, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(B).

C. For $37,233.43 in liquidated damages for unpaid and late-paid Monthly Contributions at, for each of the Trust Funds separately, the greater of 20% or $25 (except with respect to the Laborers Contract Administration Trust Fund for Southern California, for which liquidated damages are sought at the greater 10% or $20), as required by the Agreements and 29 U.S.C. § 1132(g)(2)(C).

D. For $1,280.00 in audit fees, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(E).

E. For $35.00 in insufficient funds check fees, as required by the Agreements and provided for under 29 U.S.C. § 1132(g)(2)(E).

F.  For, according to proof, any additional Monthly Contributions, interest, liquidated damages, audit fees, insufficient funds check fees, and amounts owed as a result work performed by any subcontractors of the Employer (or lower-tier subcontractors) determined to be due, pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2) and 1145.

G.  For reasonable attorneys' fees and costs of suit, as required by the Agreements and 29 U.S.C. § 1132(g)(2)(D).

H.  For such other relief that this Court deems appropriate, pursuant to any authority of the Court, including but not limited to the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

## ON ADMINCO'S SECOND CLAIM FOR RELIEF
[Jointly and Severally Against the Employer and Principal Officer for Monetary Damages for Breach of Settlement Agreement]

A.  For $60,792.73 as of July 23, 2020, pursuant to the Settlement Agreement and 29 U.S.C. § 1132(g)(2), and any other damages arising from the Employer's breach of the Settlement Agreement.

B.  For interest at the Trust Funds' plan rate(s) per annum from July 23, 2020, pursuant to terms of the Settlement Agreement and 29 U.S.C. § 1132(g)(2)(B).

C.  For attorneys' fees and costs of collection, pursuant to the Settlement Agreement and 29 U.S.C. § 1132(g)(2)(D).

D.  For such other relief that this Court deems appropriate, pursuant to any

authority of the Court, including, but not limited to, the authority established by 29 U.S.C. §§ 1132(g)(2)(E) and 1132 (a)(3)(B).

## ON ADMINCO'S THIRD CLAIM FOR RELIEF

[Against the Surety for Monetary Damages

Through Enforcement of the License Bond]

A. For enforcement of the License Bond pursuant to California Business and Professions Code §§ 7071.5(e) and 7071.11(a).

B. For the penal sum of the License Bond, plus interest at the rate or rates required by law, including California Labor Code § 218.6, from the respective days the Monthly Contributions providing the basis for the License Bond Claim became due.

C. For reasonable attorneys' fees and costs.

D. For such other relief that this Court deems appropriate.

## ON ADMINCO'S FOURTH CLAIM FOR RELIEF

[Against the Employer for Specific Performance of

Obligation to Produce Records for Audit]

For the issuance of injunctive relief pursuant to the Agreements and 29 U.S.C. §§ 1132(g)(2)(E) and/or 1132(a)(3) ordering the Employer and its managing officers, managing employees, agents and successors, as well as all those in active concert or participation with any one or more of them, to submit to an audit of the Employer's records, to fully cooperate with Adminco with respect to the audit in order for

Adminco to determine the total amount due to the Trust Funds by the Employer, and, specifically, to produce to Adminco the following payroll and business records – and any other records determined by Adminco to be necessary to conduct a full audit – for inspection, examination and copying:

A.1.   All of the Employer's payroll and employee records, as well as any other records that might be relevant to a determination of the work performed by the Employer, its employees, its subcontractors, its lower-tier subcontractors and the employees of the Employer's subcontractors and lower-tier subcontractors, including but not limited to payroll journals, employee earnings records, certified payroll records, payroll check books and stubs, cancelled payroll checks, payroll time cards and state and federal tax returns (and all other state and federal tax records), as well as labor distribution journals and any other records that might be relevant to an identification of the employees who performed work for the Employer, its subcontractors or lower-tier subcontractors, or which might be relevant to a determination of the projects on which the Employer, its employees, its subcontractors, lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work, including any records that provide the names, addresses, Social Security numbers, job classification or the number of hours worked by any one or more employee;

A.2.   All of the Employer's job files for each contract, project or job on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors worked, including but not limited to all correspondence, agreements and contracts between the Employer and any general contractor, subcontractor, owner, builder or developer, as well as all field records, job records, notices, project logs, supervisors' diaries and notes, employees' diaries and notes, memoranda, releases and any other

records that relate to the supervision of the Employer's employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors and lower-tier subcontractors, or the projects on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

   A.3. All of the Employer's records related to cash receipts, including but not limited to the Employer's cash receipts journals, accounts receivable journals, accounts receivable subsidiary ledgers and billing invoices for all contracts, projects and jobs on which the Employer, its employees, its subcontractors, its lower-tier subcontractors or the employees of its subcontractors or lower-tier subcontractors performed work;

   A.4. All of the Employer's bank statements, including but not limited to those for all checking, savings and investment accounts;

   A.5. All of the Employer's records related to disbursements, including but not limited to vendors' invoices, cash disbursement journals, accounts payable journals, check registers and all other records which indicate disbursements;

   A.6. All collective bargaining agreements between the Employer and any trade union, and all records of contributions by the Employer to any trade union trust fund; and

   A.7. All records related to the formation, licensing, renewal or operation of the Employer.

  B. For reasonable attorneys' fees and costs of suit, as required by the

1 | Agreements and provided for under 29 U.S.C. § 1132(g)(1) and/or (g)(2).

2

3 |     C.    For such other relief that this Court deems appropriate, pursuant to any

4 | authority of the Court, including but not limited to the authority established by

5 | 29 U.S.C. §§ 1132(g)(2)(E) and 1132(a)(3).

6

7 | DATED:  August 4, 2020        REICH, ADELL & CVITAN

8 |                                         A Professional Law Corporation

9 |                                         By:_____/s/_____

10 |                                             PETER A. HUTCHINSON
                                              Attorneys for Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

388343.3

21